Benjamin Ellis CONRAD, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00247–CR.

Court of Appeals of Texas, Texarkana.

Argued Nov. 16, 1999.

Decided Nov. 19, 1999.

Michael L. Skotnik, Attorney at Law, Bonham, for appellant.

James Moss, Dist. and County Atty., Bonham, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Benjamin Ellis Conrad appeals from his convictions for the offenses of aggravated sexual assault of a child and indecency with a child. Conrad was tried before a jury and convicted of both charges. On appeal, Conrad contends that the trial court erred by allowing the jury to view, in its entirety, the videotaped testimony of the victim, G.L. He complains that the trial court erred by allowing the victim's mother to stand behind him on the stand while he testified. Finally, Conrad claims that the trial court's errors affected his substantial rights and kept him from receiving a fair trial. We overrule all points of error and affirm the judgment of the trial court.

In the summer of 1996, Larry Anderson, Connie Anderson, and their three children, S. H., C. H., and G.L., moved in with Benjamin Ellis Conrad. The entire family lived there for approximately six months. However, at the end of those first six months, Larry and Connie Anderson moved out of Conrad's home, leaving their three children alone with Conrad. Shortly thereafter, the oldest child, S. H., moved out as well, and only the two boys were left living in the Conrad home.

G.L. testified that during this period of time, when C.H. and G.L. were living alone with Conrad, Conrad sexually assaulted him by touching his penis, by sucking his penis, by trying to insert his penis into G.L.'s anus, and by forcing G.L. to touch Conrad's penis.[1] All of these incidents occurred at night when G.L. was sleeping with Conrad in his bedroom.[2] This sleeping arrangement went on for weeks, and G.L. asserted that he was assaulted by Conrad approximately fifteen times. G.L. was scared to tell anyone about the abuse because Conrad had threatened to kill his family if he did tell anyone. However, G.L. finally did tell his mother about the sexual assaults, and his mother immediately removed him from Conrad's house. The incidents were reported to Child Protective Services, the matter was investigated, and Conrad was arrested.

On November 21, 1997, Conrad was indicted on charges of aggravated sexual assault of a child and indecency with a child. On June 8, 1998, a jury was impaneled to try the issue of Conrad's competency to stand trial. Conrad was found incompetent to stand trial, with a probability of recovery in the foreseeable future. After psychological evaluation, Conrad was deemed competent to stand trial. He was tried before a jury and was found guilty of both charges. Conrad elected for the jury

---

1. G.L.'s brother, C. H., also testified at trial that Conrad had assaulted him. He stated that Conrad had sucked his penis twice while he and his brother were living alone with Conrad. However, Conrad was not on trial for sexually assaulting C. H.

2. G.L. testified that he had to sleep with Conrad because he had a skin infection, and he had been wetting the bed.

to assess his punishment, and it assessed punishment at life imprisonment for the offense of aggravated sexual assault of a child, and twenty years' imprisonment for the offense of indecency with a child. Judgment was entered in accordance with the jury's assessment of punishment.

■ Conrad's first contention on appeal is that the trial court erred by allowing the jury to view, in its entirety, the videotaped testimony of G.L. When Conrad's actions were reported to Child Protective Services and the investigation into these incidents began, an interview between Ron Hamilton, of Fannin County Child Protective Services, and G.L. was videotaped. In this videotaped interview, G.L. told Hamilton about the living conditions at Conrad's home, explained the various sexual assaults, and in the last few minutes of the interview told Hamilton how Conrad had fired a BB gun at him, and how Conrad had struck him and "manhandled" him on various occasions.

At trial, the State offered this videotape into evidence. Conrad objected to the introduction of this videotape on the basis that it violated the best evidence rule, but the court overruled this objection and admitted the videotape into evidence. After the videotape had been admitted, Conrad also objected[3] to any testimony on this tape that referred to previous, extraneous offenses, and the court stated, "[a]nything perpetrated against this child on that [videotape] is okay." The videotape was then played for the jury. The last few minutes of the videotape were not shown, but the jury did hear G.L. state that, "Conrad shot me with a BB gun,...." Conrad made no objection at this time regarding the introduction of this extraneous offense. However, Conrad did object when the jury requested to see the videotape during deliberations. The court overruled this objection, though, and the videotape was sent back to the jury room.

Conrad complains that the jury should not have been allowed to view the entire videotaped interview with G.L. during its deliberations because extraneous offenses were discussed during that interview, and those allegations should have been kept from the jury. He contends that by sending the videotape to the jury room, the trial court committed reversible error because the court had not viewed the portion of the videotape that spoke of these extraneous offenses, no limiting instruction was given regarding these extraneous offenses, and according to Texas Rules of Evidence 402 and 404(b), certain showings must be made in order for extraneous offenses to be admitted into evidence. *See* Tex.R. Evid. 402, 404(b).

However, Conrad fails to take into account the effect that Article 38.37 of the Texas Code of Criminal Procedure has on the admissibility of these extraneous offenses in this case. Article 38.37 states, in pertinent part:

Sec. 1. This article applies to a proceeding in the prosecution of a defendant for an offense under the following provisions of the Penal Code, if committed against a child under 17 years of age:

(1) Chapter 21 (Sexual Offenses);

(2) Chapter 22 (Assaultive Offenses);

(3) Section 25.02 (Prohibited Sexual Conduct);

(4) Section 43.25 (Sexual Performance by a Child); or

(5) an attempt or conspiracy to commit an offense listed in this section.

Sec. 2. Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the

---

3. Conrad also objected on the basis that the proper predicate had not been laid. This objection was also overruled.

alleged offense shall be admitted for its bearing on relevant matters, including:

> (1) the state of mind of the defendant and the child; and

> (2) the previous and subsequent relationship between the defendant and the child.

TEX.CODE CRIM. PROC. ANN. art 38.37 (Vernon Supp.1999).

■ Article 38.37 of the Texas Code of Criminal Procedure applies in this case. First, these crimes were committed against a child under the age of seventeen. G.L. was twelve at the time of trial and was eleven when these incidents occurred. Second, the crimes of aggravated sexual assault of a child, which is found in Chapter 22 of the Penal Code, and indecency with a child, found in Chapter 21, are governed by this article. *See* TEX. PEN. CODE ANN. art. 21.11 (Vernon 1994), art. 22.011 (Vernon 1994 & Supp.1999). Finally, Article 38.37, § 2 supersedes application of Rules 402 and 404, and thus makes Conrad's arguments of no consequence. *See Howland v. State*, 966 S.W.2d 98, 103 (Tex.App.-Houston [1st Dist.] 1998), *aff'd on other grounds*, 990 S.W.2d 274 (Tex. Crim.App.1999); *Hinds v. State*, 970 S.W.2d 33, 34–35 (Tex.App.-Dallas 1998, no pet.). Under the language of Article 38.37, G.L.'s testimony is admissible if it involved evidence of other crimes, wrongs, or acts committed by Conrad against G.L. G.L.'s testimony on the videotape clearly met this requirement. Therefore, the trial court did not err by allowing the jury to view this videotape during deliberations.

■ Additionally, even if Article 38.37 did not apply to this case, the trial court was still correct in allowing the jury to have access to this videotape. Conrad complains on appeal that the testimony on the videotape regarding the extraneous offenses should not have been given to the jury; however, testimony regarding these extraneous offenses, of which Conrad complains on appeal, had already come into evidence without objection during the course of the trial. Generally, a party waives error regarding improperly admitted evidence if the same evidence has been admitted without objection. *See Etheridge v. State*, 903 S.W.2d 1, 14 (Tex.Crim.App. 1994), *citing Johnson v. State*, 803 S.W.2d 272, 291 (Tex.Crim.App.1990). This point of error should be overruled.[4]

■ Next, Conrad contends that the trial court erred by allowing the victim's mother to stand with him while he testified. When the State began to present its case against Conrad, the first witness it called was G.L. When the judge was qualifying G.L. as a competent witness, he was crying and visibly upset at having to testify in court. As a result of the fact that G.L. was only twelve years old, and because he was upset and crying on the stand, the court asked in open court for his mother to be brought in to stand with him while he testified. At a private bench conference, Conrad objected to G.L.'s mother standing with him while he testified. The court overruled the objection and stated, "the child was crying, and I just think it's necessary for the child's mother at this tender age to be in the courtroom." This private exchange at the bench was placed on the record.

Conrad claims that this action by the court sent an implicit message to the jury that G.L. was "victimized, vulnerable, and inherently trustworthy before [he] even began testifying .... [and that] the trial court effectively told the jury that the court found the child not only competent to testify but truthful." Conrad compares the court's words and actions in this case

---

4. In his reply brief, Conrad argues that "[t]he trial court erroneously allowed the testimony of C. H., which concerned allegations of extraneous offenses not permitted by TEX C.CRIM. P. [sic] art. 38.37." However, this point is not originally argued in his brief, and it may not be argued for the first time in a reply brief. A reply brief is allowed only to address any matter that is raised in the appellee's brief. *See* TEX.R.APP. P. 38.3. This matter was not addressed in the appellee's brief and, therefore, it will not be discussed.

to a case where the court improperly commented on the weight of the evidence in its charge instruction. *See Redwine v. AAA Life Ins. Co.,* 852 S.W.2d 10, 14 (Tex.App.-Dallas 1993, no writ). However, these two situations are not analogous to one another. In this case, the trial court did not disclose any opinion concerning a matter about which the jury would be asked. The court simply took the reasonable steps that were necessary to minimize the trauma facing G.L., which is allowed under Article 38.071 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 38.071, § 10 (Vernon Supp.1999); *see also Sperling v. State,* 924 S.W.2d 722, 726 (Tex.App.-Amarillo 1996, pet. ref'd). Courts have been allowed to present children's testimony via closed circuit television, and they have been allowed to let child victims have a comforting presence with them while they are testifying on the witness stand. *See Carmona v. State,* 880 S.W.2d 227 (Tex.App.-Austin 1994), *vacated & remanded on other grounds,* 941 S.W.2d 949 (Tex.Crim.App.1997) (court allowed the victim's sister to hold her hand while she was on the stand testifying about the sexual assault); *Sperling,* 924 S.W.2d at 726 (the court allowed the child victim to testify while holding a teddy bear).

In order to show that the trial court acted properly by allowing G.L.'s mother to stand with him while he testified, this Court must determine: (1) whether an important state interest exists, and (2) whether the procedural modification used in this trial was necessary to further that interest. *See Carmona,* 880 S.W.2d at 233, *citing Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). It has been consistently held that there is an important state interest in protecting a witness who was the victim of sexual abuse during childhood from the trauma of testifying against his or her assailant. *See Gonzales v. State,* 818 S.W.2d 756, 764–66 (Tex.Crim.App.1991); *Hightower v. State,* 822 S.W.2d 48, 51 (Tex.Crim.App.1991). Therefore, the first prong of this test is satisfied. In order to satisfy the second

prong, this Court must then look at the record to see if the trial court's procedural modification was necessary to further the interest of protecting the child victim of sexual abuse from the trauma of testifying. The trauma must be more than de minimis. *Craig,* 497 U.S. at 855–56, 110 S.Ct. 3157. Although the de minimis standard has not been explicitly defined, in the *Hightower* case the Texas Court of Criminal Appeals stated that if "[t]he emotional distress suffered by the child witness in the presence of the defendant would have been more than mere nervousness or a reluctance to testify," then the de minimis standard is satisfied. *Hightower,* 822 S.W.2d at 52. Before direct examination by the attorneys had even begun, G.L. was crying and visibly upset. The court considered this obvious distress and trauma in conjunction with the fact that this witness was only twelve years old, and determined that the modification was necessary. We agree with the trial court's determination, and we overrule this point of error.

■ Finally, Conrad contends that the trial court's errors, in the aggregate, affected Conrad's substantial rights and precluded him from receiving a fair trial. Conrad claims that by erroneously admitting testimony of extraneous offenses, allowing G.L.'s mother to stand behind him while he testified, and permitting C. H., G.L.'s brother, to testify about sexual abuse that he personally suffered at the hands of Conrad, his substantial rights were clearly affected and his right to a fair trial was prejudiced. These alleged errors, however, did not affect Conrad's substantial rights.

■ A substantial right is affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997), *citing Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557, 1572 (1946). In *Kotteakos,* the United States

Supreme Court explained the standard of review as follows:

> If, when all is said and done, the [reviewing court] is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand,.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.

*Kotteakos*, 328 U.S. at 764–65, 66 S.Ct. 1239. Obviously, according to this analysis, if no error was committed an individual's substantial rights could not have been affected. Having already determined that the trial court did not commit error by admitting the testimony of the extraneous offenses, or by allowing G.L.'s mother to stand with him while he testified, the only alleged error left to analyze is whether the court erred by allowing C.H. to testify about the sexual abuse that he personally suffered at the hands of Conrad.

At trial, C.H. testified that Conrad had committed similar acts of sexual abuse against him while he was living at the Conrad home. He stated, without objection, that Conrad had touched his penis and had sucked his penis on two separate occasions. He also testified that these incidents had occurred in Conrad's bedroom, at night. Conrad contends that by allowing C.H. to testify about his own alleged sexual abuse the trial court allowed him to impermissibly bolster the testimony of G.L.

However, Conrad allowed C.H. to testify about the incidents of sexual abuse without objection. A timely objection is necessary in order to preserve this point of error, and the error is generally waived regarding improperly admitted evidence if the same evidence has been admitted without objection. *See Etheridge*, 903 S.W.2d at 14. Before C.H. began to testify, Conrad objected, at a private bench conference, to C.H. testifying about any offenses that were perpetrated against him by Conrad. The court did not rule on this objection at that time, and Conrad did not renew this objection until after the direct examination of C.H. was concluded. Therefore, he has waived the right to complain about this testimony on appeal. *See Garcia v. State*, 573 S.W.2d 12, 16 (Tex.Crim.App. [Panel Op.] 1978).

Therefore, since no errors were committed by the trial court, Conrad's substantial rights could not have been affected. We overrule this final point of error.

The judgment of the trial court is affirmed.