NO. 07-03-0078-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



JUNE 6, 2003



______________________________




IN THE MATTER OF THE MARRIAGE OF 


ARACELIA RODRIQUEZ AND DAVID GONZALES MARTINEZ


AND IN THE INTEREST OF A.M.M. AND A.A.M., CHILDREN


_________________________________



FROM THE 154TH DISTRICT COURT OF LAMB COUNTY;



NO. 15834; HONORABLE FELIX KLEIN, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

MEMORANDUM OPINION


 Appellant David Gonzalez Martinez appeals from a judgment of divorce which
awards child support to appellee Aracelia Rodriquez and changes the last names of their
two children. We abate the appeal and remand with directions to the trial court to file
findings of fact and conclusions of law. 

 Aracelia filed suit for divorce from David on August 5, 2002. She sought orders for
conservatorship and support of the two children of the marriage if an agreement was not
reached as to such matters. She also sought to have the last names of the children
changed from Martinez to Rodriquez. 

 On October 28, 2002, a bench trial was held and a Final Decree of Divorce was
signed. On November 12, 2002, the clerk filed David's Request for Findings of Fact and
Conclusions of Law. On December 20, 2002, the clerk filed David's Notice of Past Due
Findings of Fact and Conclusions of Law. The Notice and certificate of service signed by
David, who was then and is now appearing pro se, claimed that the document was placed
in the internal mail system of the Texas Department of Criminal Justice, where he was
incarcerated, on December 11, 2002. See Tex. R. Civ. P. 5. (1) No findings and conclusions
appear of record. 

 David's appellate brief was filed on March 17, 2003. He references the trial court's
failure to file findings of fact and conclusions of law; one of his issues asserts error by the
trial court in failing to do so. Aracelia has not filed a brief. 

 Unless the appellate record affirmatively shows no harm to David, the failure of the
trial court to file properly-requested findings and conclusions on contested issues is
presumed harmful. See Cherne Indus., Inc. v. Magallanes, 763 S.W.2d 768, 772 (Tex.
1989). We conclude that the record does not affirmatively show that David has not been
harmed by the absence of findings and conclusions and the trial court's error is not
harmless. See TRCP 298, 299; Magallanes, 763 S.W.2d at 772. 

 We abate the appeal and remand the cause to the trial court. On remand, the trial
court is directed to file findings of fact and conclusions of law. Absent a request for
extension of time by the trial court, the findings of fact and conclusions of law are to be filed
on or before July 18, 2003, which date shall be deemed to be the twentieth day after a
timely request for findings and conclusions for purposes of TRCP 297, 298 and 299a,
which rules shall apply to further proceedings in the trial court pursuant to this order. The
trial court is further directed to cause the trial court clerk to prepare and file with the
appellate clerk a supplemental appellate record which includes the trial court's findings of
fact and conclusions of law. 

 Appellant and appellee are directed to re-brief the appeal. The provisions of Tex.
R. App. P. 38 shall apply to such re-briefing. 

 Except as specifically set out otherwise in this opinion, provisions of the TRCP and
TRAP apply to further proceedings. 

 Per Curiam



 

 


 

1. Further references to a Rule of Civil Procedure will be by reference to "TRCP
____."


 98, 148 L.Ed.2d 57
(2000). However, the statement is nonetheless admissible if it bears sufficient indicia of
reliability. Id. More importantly, it is per se reliable if it falls within a firmly rooted
exception to the hearsay rule. Id. An utterance made against the declarant's penal
interests constitutes such a firmly rooted exception. Id. at 149-50. 

 Next, statements are against the declarant's penal interests if they come within the
parameters of Texas Rule of Evidence 803(24). According to the latter, they must be 

 so far contrary to the declarant's pecuniary or proprietary interest, or so far
tended to subject the declarant to civil or criminal liability . . . or to make the
declarant an object of hatred, ridicule, or disgrace, that a reasonable person
in declarant's position would not have made the statement unless believing
it to be true.


Tex. R. Evid. 803(24). One other criteria must be satisfied, however, if the statement is to
be used in a criminal case; "corroborating circumstances must clearly indicate" its
"trustworthiness." Id. In other words, for the hearsay to be admissible under Rule 803(24),
it must be self-inculpatory and corroborated by circumstances indicating it to be
trustworthy. Dewberry v. State, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999). And, if it
meets these criteria it may then be used as evidence establishing a third-party's guilt for
a crime. Guidry v. State, 9 S.W.3d at 149. 

 Finally, various indicia have been suggested as helpful in assessing whether
corroborating circumstances sufficiently indicated that the statement is trustworthy. They
include 1) whether the guilt of declarant is inconsistent with the guilt of the defendant, 2)
whether the declarant was so situated that he might have committed the crime, 3) the
timing of the declaration, 4) the spontaneity of the declaration, 5) the relationship between
the declarant and the party to whom the statement is made, and 6) the existence of
independent corroborative facts. Dewberry v. State, 4 S.W.3d at 751. According to
authority, statements which are 1) spontaneous, 2) uttered in a non-custodial setting, or
3) made to someone unaffiliated with law enforcement enjoy greater trustworthiness. See
Mendez v. State, 56 S.W.3d 880, 891 (Tex. App.--Austin 2001, pet. ref'd).

Application of Standard


 Rule 803(24) 

 Having described the pertinent standard of review and relevant law, we now apply
it to the issues raised by Flores. And, the first issue we address is that involving whether
Shasta's comments, as related by Betty, satisfied the elements of Rule 803(24). We
conclude that they do. 

 In describing how she used the infant as a shield to deflect appellant's blow, Shasta
subjected herself to criminal liability. For instance, her acts of using the infant as a shield
to deflect a blow from appellant reasonably evinces an intent to place a child younger than
15 years old in imminent danger of bodily injury, and that constitutes child endangerment. 
See Tex. Pen. Code §22.041 (Vernon 2003) (stating that a person commits an offense if
he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission,
engages in conduct that places a child younger than 15 years in imminent danger of death,
bodily injury, or physical or mental impairment). So too does it evince potential criminal
liability for injury to a child. See id. at §22.04(a) (stating that a person commits an offense
if by his acts he intentionally, knowingly, recklessly, or with criminal negligence, causes
a child bodily injury). It is also reasonably conceivable that the use by an infant's parent
of the infant as a shield to deflect blows from another person could subject the parent to
ridicule or disgrace. Indeed, parents are expected to protect their child from violent
physical attack. Theirs is not to place the child in harm's way simply to protect themselves. 
And, those who pursue the latter course should be the object of ridicule and disgrace as
well as criminal sanction. So, there appeared before the trial court at bar evidence upon
which it could have reasonably concluded that the first element of Rule 803(24) was
satisfied. 

 We now turn to whether the second element was also met and find evidence of
record clearly corroborating the trustworthiness of the statement. For instance, Shasta's
description of her conduct exposes her to criminal sanction in the same manner and to the
same extent that it exposes appellant. So, her potential guilt for injuring or endangering
a child is not inconsistent with that of appellant; rather it illustrates that she too committed
a crime. 

 The conduct described by Shasta also indicates that she too may be culpable for
the very same crime for which appellant was charged. As previously mentioned, the State
indicted appellant for intentionally or knowingly causing serious bodily injury or serious
mental deficiency, impairment or injury to the infant "by not providing the child with
adequate food or nutrition or timely and adequate medical care." (Emphasis added). That
Shasta returned the infant to its bed after appellant struck the baby and he fell to the floor
and that neither parent secured medical attention for the child though the assault was
severe enough to cause the four month old to suffer a black eye and bruising evinced one
more instance of their joint failure to provide the baby with adequate medical care. Couple
this with the evidence of malnutrition, broken bones, and the like, then one has basis to
reasonably opine that Shasta too was indeed "situated that [she] might have committed the
crime" of injury by omission. 

 Next, while the record does not disclose when Shasta made the incriminating
statements to Betty, we know that it was on the day the child died. Additionally, the
statements were not made to legal authorities since Shasta uttered them to her sister-in-law. Thus, they were not the product of police interrogation or coercion. 

 Finally, independent evidence corroborated the statements. For instance, not only
did the police at the crime scene testify that the child had bruising around the left side of
his face, which was indicative of trauma, but also a pathologist and pediatrician opined that
the bruising was not accidental and had been caused by blunt force. Being hit in the face
with a hand and then dropped to the floor is just that kind of force. 

 Hope as they may, trial courts are often confronted with evidentiary questions the
answers to which are less than black or white. Difference of opinion surrounds their
resolution. Yet, it is because of the potential for differing opinions that trial courts are not
only afforded discretion but also the test used to assess its exercise speaks about being
within a zone of reasonable disagreement. The latter implicitly recognizes that reasonable
minds may differ as to a particular outcome given a particular mix of circumstances. And,
neither side is wrong if each view enjoys the support of evidence and authority. That is the
case here. Reasonable minds could differ as to whether the hearsay should have been
admitted. Nonetheless, the decision arrived at by the trial court does not stride outside the
zone of reasonable disagreement given the record before us. Thus, it acted well within its
discretion to decide that Shasta's statements were both against her penal interests and
corroborated by other circumstances. (2)

 Right of Confrontation

 We next address whether appellant was denied his right to confront his accusers
and conclude that he was not. Again, that right is not denied an accused when the
hearsay bears sufficient indicia of reliability. Guidry v. State, 9 S.W.3d at 149-50. 
Furthermore, it bears that indicia when it falls within a firmly rooted exception to the
hearsay rule, as does a declaration against penal interests. Id. Having decided that the
trial court did not abuse its discretion in concluding that Shasta's utterances fell within that
firmly rooted exception, we must also hold that its decision did not deny appellant his right
of confrontation.

 Relevance

 In his reply to the State's brief, appellant asserts that the hearsay statements should
have been excluded because they were irrelevant. Normally, courts of appeal do not allow
appellants to assert new issues or points of error through a reply brief. Conrad v. State,
10 S.W.3d 43, 48 n.4 (Tex. App.--Texarkana 1999, pet. ref'd). We deviate from this rule
here simply to say that the hearsay was indeed relevant. Again, appellant was accused
of intentionally or knowingly causing serious bodily injury or serious mental deficiency,
impairment or injury by failing to provide the child "with adequate food or nutrition or timely
and adequate medical care." To prove that allegation, it was encumbent upon the State
to pursue a strategy founded upon illustrating the historical interaction (or lack thereof)
between the child and father. And, an aspect of that interaction involved the lack of
medical care provided to the infant. Evidence illustrating that this malnourished infant
already suffering from broken bones was simply returned to his crib after being struck in
the face and dropped on the floor can reasonably be viewed as one more instance of
withholding needed medical attention. Thus, a decision holding relevant the last act of
appellant toward his son before the infant died would not fall outside the zone of
reasonable disagreement. In short, the trial court acted within its discretion in admitting
the evidence.

 We overrule appellant's issues and affirm the judgment.


 Brian Quinn

 Justice


Do not publish.
1. Though appellant refers to the right to confront granted him in both the United States and Texas
Constitutions, he briefs only the right encompassed in the former. Thus, we do not consider whether the trial
court's action somehow denied him his right to confront as that right is recognized by the Texas Constitution. 
Murphy v. State, No. 74145, 2003 WL 21461689 (Tex. Crim. App. June 25, 2003).
2. Given this decision, we need not address whether the statements were also admissible under Texas
Rule of Evidence 801(e)(2)(E).