NO. 07-02-0224-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



NOVEMBER 24, 2003


______________________________



JIMMY LEE FLORES
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 121ST DISTRICT COURT OF YOAKUM COUNTY;



NO. 1998; HON. KELLY G. MOORE, PRESIDING


_______________________________



Memorandum Opinion


_______________________________


Before QUINN, REAVIS and CAMPBELL, JJ.

 Jimmy Lee Flores (appellant) appeals his conviction for injury to a child by omission. 
Via four issues, appellant contends that the trial court erred in admitting hearsay testimony
and that the error was harmful. Allegedly, the hearsay was inadmissible because it denied
him his right to confront the declarant, which right is afforded him under both the United
States and Texas Constitutions. So too did the statement purportedly fall outside the
scope of any exception to the hearsay rule. We affirm the judgment of the trial court. 

Background


 Appellant and Shasta Sipes (Shasta) were the parents of a premature baby boy who
died when he was four months old. During his lifetime, the child suffered a broken leg and
ribs, malnutrition, a black eye, facial bruising, and diaper rash. The latter condition was
so severe that portions of the skin surrounding his groin had rotted. 

 After the baby died, appellant was indicted for injury to a child by omission. During
his jury trial, the State called appellant's sister, Betty Flores, to testify about a statement
made to her by Shasta. The latter purported to explain how the infant suffered bruising
around his left eye. In response to the prosecutor's question and over appellant's
objection, Betty said:

 I told you, the baby woke up, she went to pick up the baby, Jimmy was going
to slap her, and she put the baby in front of her, and that's how he got the
black eye . . . .

At appellant's request, the trial court instructed the jury to consider the statement as
"transactional or contextual evidence." Then, the witness was asked to describe what her
sister-in-law did "after that." Betty stated, without objection from appellant, that Shasta
"said she dropped the baby, and then she picked him up and put him in the crib. She said
it scared her . . . ." It is the admission of this testimony about which appellant complains.

Standard of Review


 Whether the trial court erred in admitting the testimony depends on whether it
abused its discretion. Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). 
Discretion is abused when the ruling falls outside the zone of reasonable disagreement. 
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). That does not occur,
however, if it is reasonably supported by the record and is correct under any theory of law
applicable to the case. Willover v. State, 70 S.W.3d at 845.

 Next, the admission of hearsay evidence against an accused implicates the
constitutional right of the individual to confront his accusers. (1) Guidry v. State, 9 S.W.3d
133, 149 (Tex. Crim. App. 1999), cert. denied, 531 U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57
(2000). However, the statement is nonetheless admissible if it bears sufficient indicia of
reliability. Id. More importantly, it is per se reliable if it falls within a firmly rooted
exception to the hearsay rule. Id. An utterance made against the declarant's penal
interests constitutes such a firmly rooted exception. Id. at 149-50. 

 Next, statements are against the declarant's penal interests if they come within the
parameters of Texas Rule of Evidence 803(24). According to the latter, they must be 

 so far contrary to the declarant's pecuniary or proprietary interest, or so far
tended to subject the declarant to civil or criminal liability . . . or to make the
declarant an object of hatred, ridicule, or disgrace, that a reasonable person
in declarant's position would not have made the statement unless believing
it to be true.


Tex. R. Evid. 803(24). One other criteria must be satisfied, however, if the statement is to
be used in a criminal case; "corroborating circumstances must clearly indicate" its
"trustworthiness." Id. In other words, for the hearsay to be admissible under Rule 803(24),
it must be self-inculpatory and corroborated by circumstances indicating it to be
trustworthy. Dewberry v. State, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999). And, if it
meets these criteria it may then be used as evidence establishing a third-party's guilt for
a crime. Guidry v. State, 9 S.W.3d at 149. 

 Finally, various indicia have been suggested as helpful in assessing whether
corroborating circumstances sufficiently indicated that the statement is trustworthy. They
include 1) whether the guilt of declarant is inconsistent with the guilt of the defendant, 2)
whether the declarant was so situated that he might have committed the crime, 3) the
timing of the declaration, 4) the spontaneity of the declaration, 5) the relationship between
the declarant and the party to whom the statement is made, and 6) the existence of
independent corroborative facts. Dewberry v. State, 4 S.W.3d at 751. According to
authority, statements which are 1) spontaneous, 2) uttered in a non-custodial setting, or
3) made to someone unaffiliated with law enforcement enjoy greater trustworthiness. See
Mendez v. State, 56 S.W.3d 880, 891 (Tex. App.--Austin 2001, pet. ref'd).

Application of Standard


 Rule 803(24) 

 Having described the pertinent standard of review and relevant law, we now apply
it to the issues raised by Flores. And, the first issue we address is that involving whether
Shasta's comments, as related by Betty, satisfied the elements of Rule 803(24). We
conclude that they do. 

 In describing how she used the infant as a shield to deflect appellant's blow, Shasta
subjected herself to criminal liability. For instance, her acts of using the infant as a shield
to deflect a blow from appellant reasonably evinces an intent to place a child younger than
15 years old in imminent danger of bodily injury, and that constitutes child endangerment. 
See Tex. Pen. Code §22.041 (Vernon 2003) (stating that a person commits an offense if
he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission,
engages in conduct that places a child younger than 15 years in imminent danger of death,
bodily injury, or physical or mental impairment). So too does it evince potential criminal
liability for injury to a child. See id. at §22.04(a) (stating that a person commits an offense
if by his acts he intentionally, knowingly, recklessly, or with criminal negligence, causes
a child bodily injury). It is also reasonably conceivable that the use by an infant's parent
of the infant as a shield to deflect blows from another person could subject the parent to
ridicule or disgrace. Indeed, parents are expected to protect their child from violent
physical attack. Theirs is not to place the child in harm's way simply to protect themselves. 
And, those who pursue the latter course should be the object of ridicule and disgrace as
well as criminal sanction. So, there appeared before the trial court at bar evidence upon
which it could have reasonably concluded that the first element of Rule 803(24) was
satisfied. 

 We now turn to whether the second element was also met and find evidence of
record clearly corroborating the trustworthiness of the statement. For instance, Shasta's
description of her conduct exposes her to criminal sanction in the same manner and to the
same extent that it exposes appellant. So, her potential guilt for injuring or endangering
a child is not inconsistent with that of appellant; rather it illustrates that she too committed
a crime. 

 The conduct described by Shasta also indicates that she too may be culpable for
the very same crime for which appellant was charged. As previously mentioned, the State
indicted appellant for intentionally or knowingly causing serious bodily injury or serious
mental deficiency, impairment or injury to the infant "by not providing the child with
adequate food or nutrition or timely and adequate medical care." (Emphasis added). That
Shasta returned the infant to its bed after appellant struck the baby and he fell to the floor
and that neither parent secured medical attention for the child though the assault was
severe enough to cause the four month old to suffer a black eye and bruising evinced one
more instance of their joint failure to provide the baby with adequate medical care. Couple
this with the evidence of malnutrition, broken bones, and the like, then one has basis to
reasonably opine that Shasta too was indeed "situated that [she] might have committed the
crime" of injury by omission. 

 Next, while the record does not disclose when Shasta made the incriminating
statements to Betty, we know that it was on the day the child died. Additionally, the
statements were not made to legal authorities since Shasta uttered them to her sister-in-law. Thus, they were not the product of police interrogation or coercion. 

 Finally, independent evidence corroborated the statements. For instance, not only
did the police at the crime scene testify that the child had bruising around the left side of
his face, which was indicative of trauma, but also a pathologist and pediatrician opined that
the bruising was not accidental and had been caused by blunt force. Being hit in the face
with a hand and then dropped to the floor is just that kind of force. 

 Hope as they may, trial courts are often confronted with evidentiary questions the
answers to which are less than black or white. Difference of opinion surrounds their
resolution. Yet, it is because of the potential for differing opinions that trial courts are not
only afforded discretion but also the test used to assess its exercise speaks about being
within a zone of reasonable disagreement. The latter implicitly recognizes that reasonable
minds may differ as to a particular outcome given a particular mix of circumstances. And,
neither side is wrong if each view enjoys the support of evidence and authority. That is the
case here. Reasonable minds could differ as to whether the hearsay should have been
admitted. Nonetheless, the decision arrived at by the trial court does not stride outside the
zone of reasonable disagreement given the record before us. Thus, it acted well within its
discretion to decide that Shasta's statements were both against her penal interests and
corroborated by other circumstances. (2)

 Right of Confrontation

 We next address whether appellant was denied his right to confront his accusers
and conclude that he was not. Again, that right is not denied an accused when the
hearsay bears sufficient indicia of reliability. Guidry v. State, 9 S.W.3d at 149-50. 
Furthermore, it bears that indicia when it falls within a firmly rooted exception to the
hearsay rule, as does a declaration against penal interests. Id. Having decided that the
trial court did not abuse its discretion in concluding that Shasta's utterances fell within that
firmly rooted exception, we must also hold that its decision did not deny appellant his right
of confrontation.

 Relevance

 In his reply to the State's brief, appellant asserts that the hearsay statements should
have been excluded because they were irrelevant. Normally, courts of appeal do not allow
appellants to assert new issues or points of error through a reply brief. Conrad v. State,
10 S.W.3d 43, 48 n.4 (Tex. App.--Texarkana 1999, pet. ref'd). We deviate from this rule
here simply to say that the hearsay was indeed relevant. Again, appellant was accused
of intentionally or knowingly causing serious bodily injury or serious mental deficiency,
impairment or injury by failing to provide the child "with adequate food or nutrition or timely
and adequate medical care." To prove that allegation, it was encumbent upon the State
to pursue a strategy founded upon illustrating the historical interaction (or lack thereof)
between the child and father. And, an aspect of that interaction involved the lack of
medical care provided to the infant. Evidence illustrating that this malnourished infant
already suffering from broken bones was simply returned to his crib after being struck in
the face and dropped on the floor can reasonably be viewed as one more instance of
withholding needed medical attention. Thus, a decision holding relevant the last act of
appellant toward his son before the infant died would not fall outside the zone of
reasonable disagreement. In short, the trial court acted within its discretion in admitting
the evidence.

 We overrule appellant's issues and affirm the judgment.


 Brian Quinn

 Justice


Do not publish.
1. Though appellant refers to the right to confront granted him in both the United States and Texas
Constitutions, he briefs only the right encompassed in the former. Thus, we do not consider whether the trial
court's action somehow denied him his right to confront as that right is recognized by the Texas Constitution. 
Murphy v. State, No. 74145, 2003 WL 21461689 (Tex. Crim. App. June 25, 2003).
2. Given this decision, we need not address whether the statements were also admissible under Texas
Rule of Evidence 801(e)(2)(E).