NO. 07-02-0224-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 24, 2003
_____

JIMMY LEE FLORES,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 121ST DISTRICT COURT OF YOAKUM COUNTY;

NO. 1998; HON. KELLY G. MOORE, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, REAVIS and CAMPBELL, JJ.

Jimmy Lee Flores (appellant) appeals his conviction for injury to a child by omission. Via four issues, appellant contends that the trial court erred in admitting hearsay testimony and that the error was harmful. Allegedly, the hearsay was inadmissible because it denied him his right to confront the declarant, which right is afforded him under both the United States and Texas Constitutions. So too did the statement purportedly fall outside the scope of any exception to the hearsay rule. We affirm the judgment of the trial court.

### Background

Appellant and Shasta Sipes (Shasta) were the parents of a premature baby boy who died when he was four months old. During his lifetime, the child suffered a broken leg and ribs, malnutrition, a black eye, facial bruising, and diaper rash. The latter condition was so severe that portions of the skin surrounding his groin had rotted.

After the baby died, appellant was indicted for injury to a child by omission. During his jury trial, the State called appellant's sister, Betty Flores, to testify about a statement made to her by Shasta. The latter purported to explain how the infant suffered bruising around his left eye. In response to the prosecutor's question and over appellant's objection, Betty said:

> I told you, the baby woke up, she went to pick up the baby, Jimmy was going to slap her, and she put the baby in front of her, and that's how he got the black eye . . . .

At appellant's request, the trial court instructed the jury to consider the statement as "transactional or contextual evidence." Then, the witness was asked to describe what her sister-in-law did "after that." Betty stated, without objection from appellant, that Shasta "said she dropped the baby, and then she picked him up and put him in the crib. She said it scared her . . . ." It is the admission of this testimony about which appellant complains.

### Standard of Review

Whether the trial court erred in admitting the testimony depends on whether it abused its discretion. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). Discretion is abused when the ruling falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). That does not occur,

2

however, if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d at 845.

Next, the admission of hearsay evidence against an accused implicates the constitutional right of the individual to confront his accusers.[1] *Guidry v. State*, 9 S.W.3d 133, 149 (Tex. Crim. App. 1999)*, cert. denied*, 531 U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000). However, the statement is nonetheless admissible if it bears sufficient indicia of reliability. *Id.* More importantly, it is *per se* reliable if it falls within a firmly rooted exception to the hearsay rule. *Id.* An utterance made against the declarant's penal interests constitutes such a firmly rooted exception. *Id.* at 149-50.

Next, statements are against the declarant's penal interests if they come within the parameters of Texas Rule of Evidence 803(24). According to the latter, they must be

> so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in declarant's position would not have made the statement unless believing it to be true.

TEX. R. EVID. 803(24). One other criteria must be satisfied, however, if the statement is to be used in a criminal case; "corroborating circumstances must clearly indicate" its "trustworthiness." *Id.* In other words, for the hearsay to be admissible under Rule 803(24), it must be self-inculpatory and corroborated by circumstances indicating it to be trustworthy. *Dewberry v. State,* 4 S.W.3d 735, 751 (Tex. Crim. App. 1999). And, if it

---

[1]Though appellant refers to the right to confront granted him in both the United States and Texas Constitutions, he briefs only the right encompassed in the former. Thus, we do not consider whether the trial court's action somehow denied him his right to confront as that right is recognized by the Texas Constitution. *Murphy v. State,* No. 74145, 2003 WL 21461689 (Tex. Crim. App. June 25, 2003).

meets these criteria it may then be used as evidence establishing a third-party's guilt for a crime. *Guidry v. State,* 9 S.W.3d at 149.

Finally, various indicia have been suggested as helpful in assessing whether corroborating circumstances sufficiently indicated that the statement is trustworthy. They include 1) whether the guilt of declarant is inconsistent with the guilt of the defendant, 2) whether the declarant was so situated that he might have committed the crime, 3) the timing of the declaration, 4) the spontaneity of the declaration, 5) the relationship between the declarant and the party to whom the statement is made, and 6) the existence of independent corroborative facts. *Dewberry v. State,* 4 S.W.3d at 751. According to authority, statements which are 1) spontaneous, 2) uttered in a non-custodial setting, or 3) made to someone unaffiliated with law enforcement enjoy greater trustworthiness. *See Mendez v. State*, 56 S.W.3d 880, 891 (Tex. App.--Austin 2001, pet. ref'd).

### *Application of Standard*

*Rule 803(24)*

Having described the pertinent standard of review and relevant law, we now apply it to the issues raised by Flores. And, the first issue we address is that involving whether Shasta's comments, as related by Betty, satisfied the elements of Rule 803(24). We conclude that they do.

In describing how she used the infant as a shield to deflect appellant's blow, Shasta subjected herself to criminal liability. For instance, her acts of using the infant as a shield to deflect a blow from appellant reasonably evinces an intent to place a child younger than 15 years old in imminent danger of bodily injury, and that constitutes child endangerment.

4

*See* TEX. PEN. CODE §22.041 (Vernon 2003) (stating that a person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment). So too does it evince potential criminal liability for injury to a child. *See id.* at §22.04(a) (stating that a person commits an offense if by his acts he intentionally, knowingly, recklessly, or with criminal negligence, causes a child bodily injury). It is also reasonably conceivable that the use by an infant's parent of the infant as a shield to deflect blows from another person could subject the parent to ridicule or disgrace. Indeed, parents are expected to protect their child from violent physical attack. Theirs is not to place the child in harm's way simply to protect themselves. And, those who pursue the latter course should be the object of ridicule and disgrace as well as criminal sanction. So, there appeared before the trial court at bar evidence upon which it could have reasonably concluded that the first element of Rule 803(24) was satisfied.

We now turn to whether the second element was also met and find evidence of record clearly corroborating the trustworthiness of the statement. For instance, Shasta's description of her conduct exposes her to criminal sanction in the same manner and to the same extent that it exposes appellant. So, her potential guilt for injuring or endangering a child is not inconsistent with that of appellant; rather it illustrates that she too committed a crime.

The conduct described by Shasta also indicates that she too may be culpable for the very same crime for which appellant was charged. As previously mentioned, the State

indicted appellant for intentionally or knowingly causing serious bodily injury or serious mental deficiency, impairment or injury to the infant "by not providing the child with adequate food or nutrition or timely and adequate *medical care*." (Emphasis added). That Shasta returned the infant to its bed after appellant struck the baby and he fell to the floor and that neither parent secured medical attention for the child though the assault was severe enough to cause the four month old to suffer a black eye and bruising evinced one more instance of their joint failure to provide the baby with adequate medical care. Couple this with the evidence of malnutrition, broken bones, and the like, then one has basis to reasonably opine that Shasta too was indeed "situated that [she] might have committed the crime" of injury by omission.

Next, while the record does not disclose when Shasta made the incriminating statements to Betty, we know that it was on the day the child died. Additionally, the statements were not made to legal authorities since Shasta uttered them to her sister-in-law. Thus, they were not the product of police interrogation or coercion.

Finally, independent evidence corroborated the statements. For instance, not only did the police at the crime scene testify that the child had bruising around the left side of his face, which was indicative of trauma, but also a pathologist and pediatrician opined that the bruising was not accidental and had been caused by blunt force. Being hit in the face with a hand and then dropped to the floor is just that kind of force.

Hope as they may, trial courts are often confronted with evidentiary questions the answers to which are less than black or white. Difference of opinion surrounds their resolution. Yet, it is because of the potential for differing opinions that trial courts are not

6

only afforded discretion but also the test used to assess its exercise speaks about being within a zone of reasonable disagreement. The latter implicitly recognizes that reasonable minds may differ as to a particular outcome given a particular mix of circumstances. And, neither side is wrong if each view enjoys the support of evidence and authority. That is the case here. Reasonable minds could differ as to whether the hearsay should have been admitted. Nonetheless, the decision arrived at by the trial court does not stride outside the zone of reasonable disagreement given the record before us. Thus, it acted well within its discretion to decide that Shasta's statements were both against her penal interests and corroborated by other circumstances.[2]

*Right of Confrontation*

We next address whether appellant was denied his right to confront his accusers and conclude that he was not. Again, that right is not denied an accused when the hearsay bears sufficient indicia of reliability. *Guidry v. State*, 9 S.W.3d at 149-50. Furthermore, it bears that indicia when it falls within a firmly rooted exception to the hearsay rule, as does a declaration against penal interests. *Id.* Having decided that the trial court did not abuse its discretion in concluding that Shasta's utterances fell within that firmly rooted exception, we must also hold that its decision did not deny appellant his right of confrontation.

*Relevance*

---

[2]Given this decision, we need not address whether the statements were also admissible under Texas Rule of Evidence 801(e)(2)(E).

7

In his reply to the State's brief, appellant asserts that the hearsay statements should have been excluded because they were irrelevant. Normally, courts of appeal do not allow appellants to assert new issues or points of error through a reply brief. *Conrad v. State*, 10 S.W.3d 43, 48 n.4 (Tex. App.--Texarkana 1999, pet. ref'd). We deviate from this rule here simply to say that the hearsay was indeed relevant. Again, appellant was accused of intentionally or knowingly causing serious bodily injury or serious mental deficiency, impairment or injury by failing to provide the child "with adequate food or nutrition or timely and adequate medical care." To prove that allegation, it was encumbent upon the State to pursue a strategy founded upon illustrating the historical interaction (or lack thereof) between the child and father. And, an aspect of that interaction involved the lack of medical care provided to the infant. Evidence illustrating that this malnourished infant already suffering from broken bones was simply returned to his crib after being struck in the face and dropped on the floor can reasonably be viewed as one more instance of withholding needed medical attention. Thus, a decision holding relevant the last act of appellant toward his son before the infant died would not fall outside the zone of reasonable disagreement. In short, the trial court acted within its discretion in admitting the evidence.

We overrule appellant's issues and affirm the judgment.


Brian Quinn
Justice

Do not publish.

8