In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00190-CR


______________________________




MELISSA MARIE MARTIN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 22563




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Melissa Marie Martin appeals one conviction of aggravated sexual assault of a child and three
convictions of indecency with a child. She was sentenced to twenty-eight years for aggravated
sexual assault and three sentences of twenty years for indecency with a child, all sentences running
concurrently. On appeal, Appellant alleges that the trial court erred by rehabilitating veniremembers
and intervening during voir dire and that she received ineffective assistance of counsel. We affirm
the trial court's judgment. 

I. Factual Background 

 In January of 2008, eight-year-old Johnny Smith (a pseudonym) visited the home of Stacy
Powell situated in Reno, Texas. Powell had a nine-year-old son, Tommy Jones (a pseudonym), who
played with Johnny. On one occasion, Powell heard voices emanating from a closet, and testified
she "heard a child say, suck it, suck it." When Powell opened the closet door, she observed Tommy
on his knees in front of Johnny, while Johnny was standing up and had Tommy by his hair. As
Powell ordered the boys out of the closet, she observed Johnny zipping up his pants. She
immediately called Lee Anna Martin, Johnny's stepmother, and asked her to come to the house. 
Powell explained what she saw and heard to Lee Anna. They proceeded to question the boys about
the incident, but got no answers. Lee Anna then took Johnny home. 

 She asked Johnny about the incident, and as they were discussing the event, he told her "my
mama did something to me." Johnny also told Lee Anna that "my mama made me touch her in
places that shouldn't have been touched" on her breast and her private area and "would make him
sit on her shoulders and put his private in her mouth." "[Johnny] said that she was naked on the bed
and . . . that she would make him rub her breast and suck on them . . . she would make him rub her
private part and lick on it." Johnny showed Lee Anna where "she would go up and down" on his
private area. He told her "that they would lay in bed, together, and watch two -- a man and a woman
in the bed, naked, together." 

 Lee Anna contacted Child Protective Services soon after their discussion and took Johnny
to the Children's Advocacy Center. Johnny subsequently acted out sexually once more after the
incident. At trial, Johnny testified and identified Appellant as his mother. He stated that he
informed Lee Anna of the abuse because he thought he was in trouble for the closet incident. Johnny
said that the abuse occurred five or six times. 

 Powell is married to Appellant's ex-husband. Mr. Powell's mother testified that when
Appellant was changing Johnny's diaper, "She put her hand over his private parts . . . [a]nd she said,
look, he has a pee hard on." She also stated that Appellant had made up and down movements with
her hands on his penis. 

II. Preservation of Error Regarding Jury Selection 

 Appellant argues that the trial court erred by intervening during the defense counsel's
voir dire and by rehabilitating veniremembers who had previously stated their opposition to
community supervision as a minimum level of punishment for the crime of aggravated sexual
assault. Her complaint is that this action of the trial court caused her to lose nine jury challenges for
cause. Appellant bears the burden of proving that the trial court clearly abused its discretion in order
to reverse on appeal. Roberts v. State, 667 S.W.2d 184, 185 (Tex. App.--Texarkana 1983, no pet.). 

 A. Standard of Review

 The conduct of voir dire examination rests within the sound discretion of the trial court and
only an abuse of discretion results in a reversal on appeal. Whitaker v. State, 653 S.W.2d 781,781
(Tex. Crim. App. 1983); Clark v. State, 608 S.W.2d 667 (Tex. Crim. App. [Panel Op.] 1980). The
entire record is observed when determining whether there is sufficient evidence to support the court's
decision to grant or deny a challenge for cause. Howes v. State, 120 S.W.3d 903, 909 (Tex.
App.--Texarkana 2003, pet. ref'd); Patrick v. State, 906 S.W.2d 481, 488 (Tex. Crim. App. 1995). 
Before we can analyze Appellant's first point of error, we must determine if Appellant properly
preserved error. "[A] preservation of error is a systemic requirement that a first-level appellate Court
should ordinarily review on its own motion." Alonzo v. State, 158 S.W.3d 515, 516 (Tex. Crim.
App. 2005). 

 An appellant will be able to raise, on appeal, objections to the refusal to grant challenges for
cause if the voir dire record reflects that an objection was submitted either during the voir dire or at
the time of the trial court's ruling and that the objection was not abandoned. Zimmerman v. State,
860 S.W.2d 89 (Tex. Crim. App. 1993). If the defendant fails to object, he or she may not
subsequently challenge that ruling on appeal. Ladd v. State, 3 S.W.3d 547 (Tex. Crim. App. 1999). 

 B. Application 

 Appellant claims that the following veniremembers were challengeable for cause: 4, 12, 14,
22, 26, 27, 28, 29, 30, 31, 61, 63. The record reflects that twelve members mentioned above
originally stated they could not consider the full range of punishment, including community
supervision, in an aggravated sexual assault case. However, when requestioned by the trial court,
only members 4, 22, and 29 continued to claim they could not consider the full range of punishment. 
The trial court granted Appellant's challenges for cause with respect to those three and overruled the
challenges for the remaining nine veniremembers. Of the remaining nine who initially indicated they
would not consider community supervision, Appellant struck five with peremptory challenges, the
State struck two, and members numbered 61 and 63 were not mathematically within reach of
possible jury service. None of the veniremembers who initially stated they would not consider
community supervision was seated on the jury. 

 For Appellant to preserve error on denied challenges for cause, she was required, on the
record, to demonstrate that she: (1) asserted a clear and specific challenge for cause; (2) used a
peremptory challenge on the (objectionable) veniremember; (3) exhausted all of her peremptory
challenges; (4) requested additional strikes; (5) objected to the juror that sat on the jury; and
(6) would have struck that juror with a peremptory strike if she had been allotted additional strikes. 
Howes, 120 S.W.3d at 908 (citing Allen v. State, 108 S.W.3d 281, 282 (Tex. Crim. App. 2003);
Nelson v. State, 848 S.W.2d 126, 134 (Tex. Crim. App. 1992)). 

 Appellant objected to the trial court's attempts at rehabilitating the veniremembers who had
stated they could not consider community supervision. Counsel also objected to the trial court's
failure to discharge those members or reinstate them to the jury panel. Appellant must assert a
challenge for cause on objectionable veniremembers when exercising peremptory challenges, and
we find that she did so. See Hallett v. Houston Nw. Med. Ctr., 689 S.W.2d 888 (Tex. 1985).

 As to the second requirement for preservation of error, an appellant must use a peremptory
strike against the objectionable veniremembers. Appellant complied with this requirement as to five
of them. Even though she was entitled to ten peremptory strikes, she only struck five of the
objectionable members. Appellant did exhaust her full complement of peremptory strikes. 

 As to the fourth requirement for preservation of error, Appellant was required to request
additional peremptory strikes sufficient to offset erroneously denied challenge(s) for cause. Busby
v. State, 253 S.W.3d 661, 672 (Tex. Crim. App. 2008). She did not ask for additional peremptory
strikes to discharge those objectionable veniremembers. Appellant went so far as to confirm the
number of alternate strikes allotted and the authorized challenges for cause without requesting
additional strikes. 

 Further, Appellant was then required to show she was "forced to take an identified
objectionable juror whom [she] would not otherwise have accepted had the trial court granted [her]
challenge for cause or granted . . . additional peremptory strikes." Colella v. State, 915 S.W.2d 834,
843 (Tex. Crim. App. 1995). She was individually asked by the trial court if she had any objections
to the seating of the jury, as a group or toward any individual, and she responded that she did not. 
Since Appellant failed to request additional peremptory strikes, it logically follows that she did not
state that she would have stricken the objectionable jurors if she had been allotted additional strikes. 
Therefore, Appellant failed to properly preserve error and thus waived her right to challenge the trial
court's denials of challenges for cause. Point of error one is overruled. 

III. Ineffective Assistance of Counsel

 A. Standard of Review

 Any allegation of ineffectiveness must be firmly founded in the record. Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim.
App. 1999). From the record received by this Court, Appellant bears the burden of proving that
counsel was ineffective by a preponderance of the evidence. Cannon v. State, 252 S.W.3d 348-49
(Tex. Crim. App. 2008); Goodspeed, 187 S.W.3d at 392; Thompson, 9 S.W.3d at 813. We apply
the two-pronged Strickland test handed down by the United States Supreme Court to determine
whether Appellant received ineffective assistance of counsel. Strickland v. Washington, 466 U.S.
668 (1984). Failure to satisfy either prong of the Strickland test is fatal. Ex parte Martinez, 195
S.W.3d 713, 730 (Tex. Crim. App. 2006). Thus, we need not examine both Strickland prongs if one
cannot be met. Strickland, 466 U.S. at 697. 

 Appellant must show counsel's performance fell below an objective standard of
reasonableness when considering prevailing professional norms. Id. at 687-88. "This requires
showing that counsel made errors so serious that counsel was not functioning as the 'counsel'
guaranteed the defendant by the Sixth Amendment." Id. at 687. There is a strong presumption that
counsel's conduct fell within the wide range of reasonable professional assistance and that the
challenged action could be considered sound trial strategy. Id. at 689; Ex parte White, 160 S.W.3d
46, 51 (Tex. Crim. App. 2004); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim App. 2000). 
Therefore, we will not second-guess the strategy of counsel at trial through hindsight. Blott v. State,
588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall v. State, 161 S.W.3d 142, 152 (Tex.
App.--Texarkana 2005, pet. ref'd). Where the record is silent as to why counsel failed to make an
objection or take certain actions, we will assume it was due to any strategic motivation that can be
imagined, and the appellant will have to rebut the presumption that trial counsel's actions were in
some way reasonable. Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); Garcia v. State,
57 S.W.3d 436, 441 (Tex. Crim. App. 2001); Fox v. State, 175 S.W.3d 475, 485-86 (Tex.
App.--Texarkana 2005, pet. ref'd). 

 Next, it is not enough for Appellant to show that the errors had some conceivable effect on
the outcome of the proceeding. Strickland, 466 U.S. at 693. To meet the second prong of the
Strickland test, Appellant must show that the deficient performance damaged her defense such that
there is a reasonable probability that the result of the trial would have been different. Id.; Tong, 25
S.W.3d at 712. A reasonable probability "is [one] sufficient to undermine confidence in the
outcome." Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). 

 B. Application 

 Appellant's complaints regarding ineffective assistance of counsel include failure of counsel
to: (1) object to Mr. Powell's mother's alleged extraneous offense testimony by not requesting notice
of extraneous offenses or of the State's intent to introduce any other episodes of sexual contact
between Appellant and Johnny; (2) introduce photographic evidence which had the potential to
exculpate Appellant; (3) request a limiting jury instruction on an extraneous act; (4) object to
bolstering testimony from an expert witness on whether the complainant was telling the truth; and
(5) request a hearing on the testimony of Lee Anna, Johnny's stepmother, regarding the outcry
statement made by the complainant. 

 In this case, although Appellant filed a motion for new trial, she did not complain of counsel's
ineffectiveness. (1) Therefore, we have no record of a hearing conducted to explain the alleged acts or
omissions of trial counsel. 

 1. Extraneous Offenses

 Appellant complains that her counsel did not request notice of extraneous offenses. The
standard discovery order issued by the court required the State to provide notice of "all other crimes,
wrongs and acts of which" it had actual knowledge. Any additional notices were not required. 
Appellant's complaint deals with the issue of whether her counsel opened the door to the extraneous
offense testimony that "[Appellant] put her hand over his private parts . . . [a]nd she said, look, he
has a pee hard on" and made movements with her hand on his penis. The following exchange
occurred during Appellant's direct examination:

 Q. Is there anything else that you have to tell the jury or the Judge as to
why you dont think it would be possible that there was any physical contact between
you and your son?

 

 A. Its just that Im not that kind of person.

 

 Q. Okay. You would never be somebody who would have physical
contact -- 

 

 A. Correct.

 

 Q. -- with a child -- with anyone below the legal age?

 

 A. That is correct. 


The law is clear that:

 Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other
crimes, wrongs, or acts committed by the defendant against the child who is the
victim of the alleged offense shall be admitted for its bearing on relevant matters,
including: 


 (1) the state of mind of the defendant and the child; and 


 (2) the previous and subsequent relationship between the defendant and the
child.


Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (Vernon Supp. 2008). Because the evidence would be
admissible, counsel had no duty to object, and the failure to do so does not render counsel's 
assistance ineffective. See Conrad v. State, 10 S.W.3d 43, 45 (Tex. App.--Texarkana 1999, pet.
ref'd).

 2. Limiting Instruction 

 Appellant next points us to her counsel's failure to request a limiting instruction regarding
extraneous offense evidence simultaneously with the receipt of the evidence. Such an instruction
was given in the jury charge, but not at the time the evidence was presented. We can conceive that
counsel did not want to ask for a limiting instruction because it might direct the jury's attention to
the extraneous offense. Counsel could have believed that by not objecting, he would minimize the
effect the evidence had on the jury. Further, the trial court's charge stated that evidence of other
offenses may only be used to aid . . . in determining motive, opportunity, intent, preparation, plan,
knowledge, absence of mistake, or to rebut any defensive theory. We presume the jury followed
the trial courts instruction. Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

 3. Exculpatory Evidence 

 Johnny testified that he did not notice any scars on Appellant during the sexual encounters. 
Appellant claimed she had a scar "from hip bone to hip bone, where [she] had [her] partial
hysterectomy." Appellant complains that her counsel should have produced exculpatory evidence
depicting her scar. There are conceivable motives as to why counsel did not want to introduce a
photograph of Appellant's hysterectomy scar. Contrary to Appellant's testimony, evidence was
introduced through her physician that her scar was smaller than Appellant had described. 
Introducing such evidence might have countered Appellant's credibility. Once again, we have no
record to explain the attorney's rationale. 

 4. Outcry Statement 

 Appellant argues that counsel was ineffective because he failed to request a hearing pursuant
to Article 38.072 of the Texas Code of Criminal Procedure to determine whether the outcry
statements made to the outcry witness were reliable. See Tex. Code Crim. Proc. Ann. art. 38.072
(Vernon 2005). The State timely gave notice of its intent to use the outcry statements and provided
defense counsel with a written report. Absent a record explaining trial counsel's strategy, we can
assume trial counsel either believed that the statements were reliable or intended to cross-examine
the outcry witness to establish that Johnny made these statements to deflect attention from his actions
toward Tommy as a part of his overall defensive strategy. 

 With respect to the above issues, it cannot be said that counsel fell below standards of
prevailing professional norms given the possible explanations for his behavior. Tong, 25 S.W.3d
at 712. 

 5. Bolstering 

 Additionally, Appellant argues that the State's questioning of an expert witness resulted in
the bolstering of Johnny's credibility:

 Q. In your experience in interviewing children, do they change up their
story during their interview?

 

 A. It kind of depends. Sometimes they do. But usually they do not. 
Usually, they're pretty consistent throughout the interview. 

 

 Q. If there's a child that you believe is not telling you the truth, do they
have a difficult time remembering what they may have told you a few minutes
before?


 A. Yes. 

 

 Q. Did you have a problem with [Johnny]? 

 

 A. No. 


Although Appellant's counsel did not object, he cross-examined the witness, who admitted that it
is common for children to lie. The witness did not directly testify that the child was truthful. An
objection to this evidence would require the attorney to specify to the court the argument that the
expert's testimony improperly commented that the child's testimony was truthful. A judgment call
could be made that the objection, even if legally correct, would negatively impact the jury. Once
again, we have no record of counsel's reasoning. Nonetheless, even if we found that counsel was
deficient in failing to object to the State's bolstering of Johnny's credibility, Appellant does not show
that it is reasonably probable that such omission occasioned a different outcome of the trial. 

 Applying the second requirement of the Strickland test, Appellant must prove that counsel's
errors affected the outcome of the proceeding. Strickland, 466 U.S. at 693. The court must examine
the alleged errors in the context of the overall record when addressing the second Strickland prong. 
Ex parte Menchaca, 854 S.W.2d 128, 132 (Tex. Crim. App. 1993). We must evaluate performance
while taking into consideration the totality of representation and the particular circumstances of this
case. Thompson, 9 S.W.3d at 813; Ex parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). 
Appellant claims that the "record supports a showing of harm." In this case, the testimony showed: 
(1) Johnny had performed oral sex on Appellant; (2) Appellant had performed oral sex on Johnny;
(3) Appellant had forced Johnny to watch adult films; (4) Appellant had fondled Johnny as an infant;
and (5) Johnny acted out sexually after these events. In light of the evidence presented at trial,
Appellant has failed to demonstrate that even if counsel's performance was deficient, the result of
the proceeding would have been different but for counsel's errors. Mitchell, 68 S.W.3d at 642. (2) 

 In this case, it is apparent that the court record is lacking counsel's reasoning behind his trial
strategy. "Failure to make the required showing of . . . deficient performance . . . defeats the
ineffectiveness claim." Strickland, 466 U.S. at 699; Thompson, 9 S.W.3d at 813. 

 Because Appellant cannot meet her burden to overcome the presumption that counsel's
conduct fell within the range of reasonable professional assistance or that the result at trial would
have been different but for counsel's alleged ineffectiveness, we overrule her second point of error. 

IV. Conclusion

 We affirm the trial court's judgment.




 Jack Carter

 Justice


Date Submitted: July 13, 2009

Date Decided: July 31, 2009


Do Not Publish


1. An ineffective assistance claim may be brought for the first time on appeal. Robinson v.
State, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000). 
2. Appellant complains that counsel's ineffectiveness committed during the guilt/innocence
phase led to a longer sentence during punishment. Since Appellant does not allege counsel was
ineffective during the punishment phase, and none of the alleged claims of ineffectiveness would
affect the jury's determination during sentencing, we need not address this issue. 


r>




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-11-00045-CV

                                                ______________________________

 

 

 

                                                                        IN
RE:

PATRICIA
J. SHERER

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                              Memorandum
Opinion by Justice Carter

                                                                              

                                                                              








                                                      MEMORANDUM
OPINION

 

            Realtor Patricia J. Sherer was married
to J. Ray Sherer (Ray), who passed away on September 18, 1999.  The couple had executed a revocable living
trust called the J. Ray Sherer and Patricia J. Sherer Trust in 1994, funded
with real and personal property valued at $700,000.00.  The trust provided that [a]t the death of
the grantors, the remaining property would be distributed to certain named
contingent beneficiaries, including his son, James Ray Sherer, and daughter,
Gloria Jean Robertson.  After Rays
passing, Patricia became the sole trustee under the trust and sought to revoke
and/or modify the trust.  Rays children,
James and Gloria, brought suit for declaratory judgment concerning the the
parties rights and responsibilities under the terms of the trust.  They complained that Patricia was selling the
real estate holdings of the trust, and sought to remove her as trustee.  Also, Rays mother, Bertha M. Sherer had
given her son monies to hold for her benefit, which was held in the trust by
Ray.  After Rays death, Patricia took
control of the funds, and James, under a power of attorney for the 102-year-old
Bertha, asked the court to declare Patricia a constructive trustee for Berthas
benefit, order a turn over for the funds, and make full accounting of all
transactions. 

            In 2005, the trial court entered a
final declaratory judgment holding that Patricia did not have the right to
revoke or amend the trust.  However, under
the judgment, she was entitled to make reasonable distributions to herself as
the primary beneficiary of the trust.  At
that time, the trial court found that Patricia should not be removed as the
Trustee, but provided that James and Gloria be entitled to a complete and
full accounting from Patricia regarding the Trusts assets and activities,
which was to occur on or before December 1, 2005, and for each subsequent
year.  The judgment provided that James
and Gloria could make written objections to the accounting and that the
accounting would be submitted to the trial court for review, correction, and/or
approval if the objections could not be resolved after notice and opportunity
to cure.  With respect to Berthas funds,
the court ordered Patricia to make a full accounting before December 1, 2005,
of the trust assets that belonged to Bertha, imposed a constructive trust, and
upon approval of the accounting, ordered a turnover of the funds.  

            Patricia failed to make the
accounting ordered by the trial court, and a motion for sanctions and removal
of Patricia as trustee was filed.  The
trial court set the matter for hearing and found Patricia in contempt.  However, instead of removing Patricia as
trustee, the court ordered her to make the required accountings by February 24,
2006.  In October 2010, James and Gloria
filed a motion to enforce the declaratory judgment and a petition to remove
Patricia as constructive trustee for the monies held for Bertha.  The motion alleged that Patricia failed to
make the required accountings and failed to turn over funds belonging to
Bertha, who had died intestate.  

            Patricia filed a motion to dismiss
the motion to enforce and petition to remove her as trustee of funds held for
Bertha.  The motion alleged that the
trial court was without jurisdiction to hear the matter because it did not have
plenary power to make modifications to the declaratory judgment entered five
years earlier.  Patricia also alleged
that the new allegations were barred by res judicata and collateral
estoppel.  The trial court denied her
motion to dismiss, and now, Patricia has filed a petition for writ of mandamus
seeking that we order Judge Laurine Blake, Judge of the 336th Judicial District
Court of Fannin County, to grant her motion to dismiss the motion and petition
to remove her as trustee.    

            Mandamus is an extraordinary
remedy, available only in limited circumstances, which issues only to correct
a clear abuse of discretion or violation of a duty imposed by law when no other
adequate remedy by law is available.  Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); In re Ford Motor Co., 988 S.W.2d 714, 721 (Tex. 1998).  A writ of mandamus will issue only if (1) it
is necessary to correct a clear abuse of discretion or the violation of a duty
imposed by law, and (2) there is no other adequate remedy by law, such as an
appeal.  CSR Ltd. v. Link, 925 S.W.2d 591, 596 (Tex. 1996).

            Patricia argues that the trial court
clearly abused its discretion in failing to grant her motion to dismiss
addressing issues of plenary power, res judicata and collateral estoppel
because it involved the courts jurisdiction to hear the dispute.  However, Texas courts have long recognized
that res judicata and collateral estoppel are affirmative defenses that
constitute pleas in bar, not pleas to the jurisdiction.  PNS
Stores, Inc. v. Riveria, No. 04-09-00561-CV, 2010 WL 4336170, at *5 (Tex.
App.San Antonio Nov. 3, 2010, pet. filed) (citing Tex. Hwy. Dept v. Jarrell, 418 S.W.2d 486, 488 (Tex. 1967)).  The record demonstrates that claims of res
judicata and collateral estoppel do not apply to the motion to enforce the
trial courts judgment and to the new claim involving Patricias failure to
turn over funds belonging to Bertha.  

            In addition, Rule 308 of the Texas
Rules of Civil Procedure vests with the trial court explicit statutory
authority and inherent power to enforce its judgments.  Further, Section 37.001 of the Texas Civil
Practice and Remedies Code specifically provides, Further relief based on a
declaratory judgment or decree may be granted whenever necessary or proper.  The application must be by petition to a court
having jurisdiction to grant the relief.  Tex.
Civ. Prac. & Rem. Code Ann. § 37.011 (Vernon 2008).  In light of these rules, we conclude Patricia
has not shown a clear abuse of discretion or a violation of a duty imposed by
law on the part of the trial judge.  

            Even if Patricia had met the first
prerequisite for a writ of mandamus, we would not grant mandamus because she
would have an adequate remedy by appeal. 
In re Barnett Gathering, L.P.,
No. 11-09-00351-CV, 2010 WL 747683, at *1 (Tex. App.Eastland Mar. 5, 2010,
orig. proceeding [mand. denied]). 
Absent extraordinary circumstances not present here, a denial of a
motion to dismiss . . . is a ruling incident to the ordinary trial process
which will not be corrected by mandamus, but by the legal remedy of the
ordinary appellate process.  Hooks v. Fourth Court of Appeals, 808 S.W.2d
56, 59 (Tex. 1991) (citing Abor v. Black,
695 S.W.2d 564, 56667 (Tex. 1985)) (This court has consistently held that it
lacks jurisdiction to issue writs of mandamus to supervise or correct
incidental rulings of a trial judge when there is an adequate remedy by
appeal.  Such incidental rulings include:
 (1) pleas to the jurisdiction . . . and
a myriad of interlocutory orders and judgments . . . [even if] it might
logically be argued that the petitioner for the writ was entitled, as a matter
of law, to the action sought to be compelled.).  

            Appeal is generally an adequate
remedy for errors in subject-matter jurisdiction, but mandamus may be justified
in extraordinary circumstances.  In re Bay Area Citizens Against Lawsuit
Abuse, 982 S.W.2d 371, 375 (Tex. 1998); see
Little v. Daggett, 858 S.W.2d 368 (Tex. 1993).  For example, an appeal would be inadequate and
mandamus may be appropriate when parties are in danger of permanently losing
substantial rights.  In re Liberty Mut. Ins. Co., 24 S.W.3d 637, 639 (Tex. App.­­­­­­­­­Texarkana
2000, orig. proceeding) (citing Canadian
Helicopters Ltd. v.Wittig, 876 S.W.2d 304, 306 (Tex. 1994)); see also In re Team Rocket, L.P., 256
S.W.3d 257, 262 (Tex. 2008).  Patricia
has not alleged that any party is in danger of permanently losing substantial
rights and does not otherwise brief the issue of why remedy by appeal would be
inadequate.  

            Accordingly, we deny the petition
for writ of mandamus.  

                                                                        

 

 

                                                                                                Jack Carter

                                                                                                Justice

 

Date
Submitted:          May 26, 2011  

Date
Decided:             May 27, 2011