

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-08-00190-CR
_____


MELISSA MARIE MARTIN, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 22563


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Melissa Marie Martin appeals one conviction of aggravated sexual assault of a child and three convictions of indecency with a child. She was sentenced to twenty-eight years for aggravated sexual assault and three sentences of twenty years for indecency with a child, all sentences running concurrently. On appeal, Appellant alleges that the trial court erred by rehabilitating veniremembers and intervening during voir dire and that she received ineffective assistance of counsel. We affirm the trial court's judgment.

## I.       Factual Background

In January of 2008, eight-year-old Johnny Smith (a pseudonym) visited the home of Stacy Powell situated in Reno, Texas. Powell had a nine-year-old son, Tommy Jones (a pseudonym), who played with Johnny. On one occasion, Powell heard voices emanating from a closet, and testified she "heard a child say, suck it, suck it." When Powell opened the closet door, she observed Tommy on his knees in front of Johnny, while Johnny was standing up and had Tommy by his hair. As Powell ordered the boys out of the closet, she observed Johnny zipping up his pants. She immediately called Lee Anna Martin, Johnny's stepmother, and asked her to come to the house. Powell explained what she saw and heard to Lee Anna. They proceeded to question the boys about the incident, but got no answers. Lee Anna then took Johnny home.

She asked Johnny about the incident, and as they were discussing the event, he told her "my mama did something to me." Johnny also told Lee Anna that "my mama made me touch her in

2

places that shouldn't have been touched" on her breast and her private area and "would make him sit on her shoulders and put his private in her mouth." "[Johnny] said that she was naked on the bed and . . . that she would make him rub her breast and suck on them . . . she would make him rub her private part and lick on it." Johnny showed Lee Anna where "she would go up and down" on his private area. He told her "that they would lay in bed, together, and watch two -- a man and a woman in the bed, naked, together."

Lee Anna contacted Child Protective Services soon after their discussion and took Johnny to the Children's Advocacy Center. Johnny subsequently acted out sexually once more after the incident. At trial, Johnny testified and identified Appellant as his mother. He stated that he informed Lee Anna of the abuse because he thought he was in trouble for the closet incident. Johnny said that the abuse occurred five or six times.

Powell is married to Appellant's ex-husband. Mr. Powell's mother testified that when Appellant was changing Johnny's diaper, "She put her hand over his private parts . . . [a]nd she said, look, he has a pee hard on." She also stated that Appellant had made up and down movements with her hands on his penis.

## II.    Preservation of Error Regarding Jury Selection

Appellant argues that the trial court erred by intervening during the defense counsel's voir dire and by rehabilitating veniremembers who had previously stated their opposition to community supervision as a minimum level of punishment for the crime of aggravated sexual

3

assault. Her complaint is that this action of the trial court caused her to lose nine jury challenges for cause. Appellant bears the burden of proving that the trial court clearly abused its discretion in order to reverse on appeal. *Roberts v. State*, 667 S.W.2d 184, 185 (Tex. App.—Texarkana 1983, no pet.).

### A.       Standard of Review

The conduct of voir dire examination rests within the sound discretion of the trial court and only an abuse of discretion results in a reversal on appeal. *Whitaker v. State*, 653 S.W.2d 781,781 (Tex. Crim. App. 1983); *Clark v. State*, 608 S.W.2d 667 (Tex. Crim. App. [Panel Op.] 1980). The entire record is observed when determining whether there is sufficient evidence to support the court's decision to grant or deny a challenge for cause. *Howes v. State*, 120 S.W.3d 903, 909 (Tex. App.—Texarkana 2003, pet. ref'd); *Patrick v. State*, 906 S.W.2d 481, 488 (Tex. Crim. App. 1995). Before we can analyze Appellant's first point of error, we must determine if Appellant properly preserved error. "[A] preservation of error is a systemic requirement that a first-level appellate Court should ordinarily review on its own motion." *Alonzo v. State*, 158 S.W.3d 515, 516 (Tex. Crim. App. 2005).

An appellant will be able to raise, on appeal, objections to the refusal to grant challenges for cause if the voir dire record reflects that an objection was submitted either during the voir dire or at the time of the trial court's ruling and that the objection was not abandoned. *Zimmerman v. State*, 860 S.W.2d 89 (Tex. Crim. App. 1993). If the defendant fails to object, he or she may not subsequently challenge that ruling on appeal. *Ladd v. State*, 3 S.W.3d 547 (Tex. Crim. App. 1999).

4

**B.      Application**

Appellant claims that the following veniremembers were challengeable for cause: 4, 12, 14, 22, 26, 27, 28, 29, 30, 31, 61, 63. The record reflects that twelve members mentioned above originally stated they could not consider the full range of punishment, including community supervision, in an aggravated sexual assault case. However, when requestioned by the trial court, only members 4, 22, and 29 continued to claim they could not consider the full range of punishment. The trial court granted Appellant's challenges for cause with respect to those three and overruled the challenges for the remaining nine veniremembers. Of the remaining nine who initially indicated they would not consider community supervision, Appellant struck five with peremptory challenges, the State struck two, and members numbered 61 and 63 were not mathematically within reach of possible jury service. None of the veniremembers who initially stated they would not consider community supervision was seated on the jury.

For Appellant to preserve error on denied challenges for cause, she was required, on the record, to demonstrate that she: (1) asserted a clear and specific challenge for cause; (2) used a peremptory challenge on the (objectionable) veniremember; (3) exhausted all of her peremptory challenges; (4) requested additional strikes; (5) objected to the juror that sat on the jury; and (6) would have struck that juror with a peremptory strike if she had been allotted additional strikes. *Howes*, 120 S.W.3d at 908 (citing *Allen v. State*, 108 S.W.3d 281, 282 (Tex. Crim. App. 2003); *Nelson v. State*, 848 S.W.2d 126, 134 (Tex. Crim. App. 1992)).

5

Appellant objected to the trial court's attempts at rehabilitating the veniremembers who had stated they could not consider community supervision. Counsel also objected to the trial court's failure to discharge those members or reinstate them to the jury panel. Appellant must assert a challenge for cause on objectionable veniremembers when exercising peremptory challenges, and we find that she did so. *See Hallett v. Houston Nw. Med. Ctr.*, 689 S.W.2d 888 (Tex. 1985).

As to the second requirement for preservation of error, an appellant must use a peremptory strike against the objectionable veniremembers. Appellant complied with this requirement as to five of them. Even though she was entitled to ten peremptory strikes, she only struck five of the objectionable members. Appellant did exhaust her full complement of peremptory strikes.

As to the fourth requirement for preservation of error, Appellant was required to request additional peremptory strikes sufficient to offset erroneously denied challenge(s) for cause. *Busby v. State*, 253 S.W.3d 661, 672 (Tex. Crim. App. 2008). She did not ask for additional peremptory strikes to discharge those objectionable veniremembers. Appellant went so far as to confirm the number of alternate strikes allotted and the authorized challenges for cause without requesting additional strikes.

Further, Appellant was then required to show she was "forced to take an identified objectionable juror whom [she] would not otherwise have accepted had the trial court granted [her] challenge for cause or granted . . . additional peremptory strikes." *Colella v. State*, 915 S.W.2d 834, 843 (Tex. Crim. App. 1995). She was individually asked by the trial court if she had any objections

6

to the seating of the jury, as a group or toward any individual, and she responded that she did not. Since Appellant failed to request additional peremptory strikes, it logically follows that she did not state that she would have stricken the objectionable jurors if she had been allotted additional strikes. Therefore, Appellant failed to properly preserve error and thus waived her right to challenge the trial court's denials of challenges for cause. Point of error one is overruled.

## III. Ineffective Assistance of Counsel

### A. Standard of Review

Any allegation of ineffectiveness must be firmly founded in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). From the record received by this Court, Appellant bears the burden of proving that counsel was ineffective by a preponderance of the evidence. *Cannon v. State*, 252 S.W.3d 348–49 (Tex. Crim. App. 2008); *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813. We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to determine whether Appellant received ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006). Thus, we need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697.

Appellant must show counsel's performance fell below an objective standard of reasonableness when considering prevailing professional norms. *Id.* at 687–88. "This requires

showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Id.* at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim App. 2000). Therefore, we will not second-guess the strategy of counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd). Where the record is silent as to why counsel failed to make an objection or take certain actions, we will assume it was due to any strategic motivation that can be imagined, and the appellant will have to rebut the presumption that trial counsel's actions were in some way reasonable. *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001); *Fox v. State*, 175 S.W.3d 475, 485–86 (Tex. App.—Texarkana 2005, pet. ref'd).

Next, it is not enough for Appellant to show that the errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 693. To meet the second prong of the *Strickland* test, Appellant must show that the deficient performance damaged her defense such that there is a reasonable probability that the result of the trial would have been different. *Id.*; *Tong*, 25 S.W.3d at 712. A reasonable probability "is [one] sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

**B.      Application**

Appellant's complaints regarding ineffective assistance of counsel include failure of counsel to:  (1) object to Mr. Powell's mother's alleged extraneous offense testimony by not requesting notice of extraneous offenses or of the State's intent to introduce any other episodes of sexual contact between Appellant and Johnny; (2) introduce photographic evidence which had the potential to exculpate Appellant; (3) request a limiting jury instruction on an extraneous act; (4) object to bolstering testimony from an expert witness on whether the complainant was telling the truth; and (5) request a hearing on the testimony of Lee Anna, Johnny's stepmother, regarding the outcry statement made by the complainant.

In this case, although Appellant filed a motion for new trial, she did not complain of counsel's ineffectiveness.[1]  Therefore, we have no record of a hearing conducted to explain the alleged acts or omissions of trial counsel.

**1.      Extraneous Offenses**

Appellant complains that her counsel did not request notice of extraneous offenses.  The standard discovery order issued by the court required the State to provide notice of "all other crimes, wrongs and acts of which" it had actual knowledge.  Any additional notices were not required. Appellant's complaint deals with the issue of whether her counsel opened the door to the extraneous offense testimony that "[Appellant] put her hand over his private parts . . . [a]nd she said, look, he

---

[1]An ineffective assistance claim may be brought for the first time on appeal.  *Robinson v. State*, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000).

9

has a pee hard on" and made movements with her hand on his penis. The following exchange occurred during Appellant's direct examination:

> Q. Is there anything else that you have to tell the jury or the Judge as to why you don't think it would be possible that there was any physical contact between you and your son?
>
> A. It's just that I'm not that kind of person.
>
> Q. Okay. You would never be somebody who would have physical contact --
>
> A. Correct.
>
> Q. -- with a child -- with anyone below the legal age?
>
> A. That is correct.

The law is clear that:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp. 2008). Because the evidence would be admissible, counsel had no duty to object, and the failure to do so does not render counsel's assistance ineffective. *See Conrad v. State*, 10 S.W.3d 43, 45 (Tex. App.—Texarkana 1999, pet. ref'd).

10

## 2. Limiting Instruction

Appellant next points us to her counsel's failure to request a limiting instruction regarding extraneous offense evidence simultaneously with the receipt of the evidence. Such an instruction was given in the jury charge, but not at the time the evidence was presented. We can conceive that counsel did not want to ask for a limiting instruction because it might direct the jury's attention to the extraneous offense. Counsel could have believed that by not objecting, he would minimize the effect the evidence had on the jury. Further, the trial court's charge stated that evidence of other offenses may only be used to "aid . . . in determining motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or to rebut any defensive theory." We presume the jury followed the trial court's instruction. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

## 3. Exculpatory Evidence

Johnny testified that he did not notice any scars on Appellant during the sexual encounters. Appellant claimed she had a scar "from hip bone to hip bone, where [she] had [her] partial hysterectomy." Appellant complains that her counsel should have produced exculpatory evidence depicting her scar. There are conceivable motives as to why counsel did not want to introduce a photograph of Appellant's hysterectomy scar. Contrary to Appellant's testimony, evidence was introduced through her physician that her scar was smaller than Appellant had described. Introducing such evidence might have countered Appellant's credibility. Once again, we have no record to explain the attorney's rationale.

11

### 4. Outcry Statement

Appellant argues that counsel was ineffective because he failed to request a hearing pursuant to Article 38.072 of the Texas Code of Criminal Procedure to determine whether the outcry statements made to the outcry witness were reliable. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon 2005). The State timely gave notice of its intent to use the outcry statements and provided defense counsel with a written report. Absent a record explaining trial counsel's strategy, we can assume trial counsel either believed that the statements were reliable or intended to cross-examine the outcry witness to establish that Johnny made these statements to deflect attention from his actions toward Tommy as a part of his overall defensive strategy.

With respect to the above issues, it cannot be said that counsel fell below standards of prevailing professional norms given the possible explanations for his behavior. *Tong*, 25 S.W.3d at 712.

### 5. Bolstering

Additionally, Appellant argues that the State's questioning of an expert witness resulted in the bolstering of Johnny's credibility:

> Q.     In your experience in interviewing children, do they change up their story during their interview?
>
> A.     It kind of depends. Sometimes they do. But usually they do not. Usually, they're pretty consistent throughout the interview.

Q.      If there's a child that you believe is not telling you the truth, do they have a difficult time remembering what they may have told you a few minutes before?

A.      Yes.

Q.      Did you have a problem with [Johnny]?

A.      No.

Although Appellant's counsel did not object, he cross-examined the witness, who admitted that it is common for children to lie. The witness did not directly testify that the child was truthful. An objection to this evidence would require the attorney to specify to the court the argument that the expert's testimony improperly commented that the child's testimony was truthful. A judgment call could be made that the objection, even if legally correct, would negatively impact the jury. Once again, we have no record of counsel's reasoning. Nonetheless, even if we found that counsel was deficient in failing to object to the State's bolstering of Johnny's credibility, Appellant does not show that it is reasonably probable that such omission occasioned a different outcome of the trial.

Applying the second requirement of the *Strickland* test, Appellant must prove that counsel's errors affected the outcome of the proceeding. *Strickland*, 466 U.S. at 693. The court must examine the alleged errors in the context of the overall record when addressing the second *Strickland* prong. *Ex parte Menchaca*, 854 S.W.2d 128, 132 (Tex. Crim. App. 1993). We must evaluate performance while taking into consideration the totality of representation and the particular circumstances of this case. *Thompson*, 9 S.W.3d at 813; *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991).

13

Appellant claims that the "record supports a showing of harm." In this case, the testimony showed: (1) Johnny had performed oral sex on Appellant; (2) Appellant had performed oral sex on Johnny; (3) Appellant had forced Johnny to watch adult films; (4) Appellant had fondled Johnny as an infant; and (5) Johnny acted out sexually after these events. In light of the evidence presented at trial, Appellant has failed to demonstrate that even if counsel's performance was deficient, the result of the proceeding would have been different but for counsel's errors. *Mitchell*, 68 S.W.3d at 642.[2]

In this case, it is apparent that the court record is lacking counsel's reasoning behind his trial strategy. "Failure to make the required showing of . . . deficient performance . . . defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 699; *Thompson*, 9 S.W.3d at 813.

Because Appellant cannot meet her burden to overcome the presumption that counsel's conduct fell within the range of reasonable professional assistance or that the result at trial would have been different but for counsel's alleged ineffectiveness, we overrule her second point of error.

---

[2]Appellant complains that counsel's ineffectiveness committed during the guilt/innocence phase led to a longer sentence during punishment. Since Appellant does not allege counsel was ineffective during the punishment phase, and none of the alleged claims of ineffectiveness would affect the jury's determination during sentencing, we need not address this issue.

## IV.      Conclusion

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted:      July 13, 2009
Date Decided:      July 31, 2009

Do Not Publish